1

2

3

4

5

6

7

8  UNITED STATES DISTRICT COURT

9  SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 MANUELA FARINAS, | Case No.:  19-cv-1760-GPC-WVG |
| 12 Plaintiff, | **JUDGMENT AND ORDER:** |
| 13 v. | **(1) ADOPTING REPORT AND RECOMMENDATION;** |
| 14 ANDREW SAUL, Commissioner of Social Security, | |
| 15 | **(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND** |
| 16 Defendant. | |
| 17 | |
| 18 | **(3) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| 19 | |
| 20 | |
| 21 | **[ECF Nos. 18, 19, 21]** |

22      Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act

23  ("Act") seeking judicial review of the final administrative decision of the Commissioner

24  of the Social Security Administration ("Commissioner"), in which the decision denied

25  Plaintiff's application for disability benefits under Title II of the Act ("Title II benefits").

26  (ECF No. 1.)  The parties filed summary judgment motions.  (*See* ECF Nos. 18, 19.)  On

27                                                        1

28

February 3, 2021, Magistrate Judge William V. Gallo issued a report and recommendation ("R&R") recommending that Plaintiff's motion for summary judgment be denied and that Defendant's cross-motion for summary judgment be granted.  (ECF No. 21.)  Plaintiff did not file an objection.  After considering all related documents, the Court **ADOPTS** the R&R.  Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion for summary judgment.

## I.   BACKGROUND

After reviewing the R&R and the Administrative Record, the Court recites the facts as substantially presented in the R&R,[1] (ECF No. 21 at 4–11.[2])

### A.   Plaintiff's Medical Condition

Plaintiff was born on March 10, 1963.  (AR 1784.[3])  In or around 2000, Plaintiff worked as a caregiver.  (*See* AR 1785.)  Her job duties centered on providing patient care.  (*Id.*)  Typical responsibilities included bathing, dressing, cooking for and feeding patients, housekeeping, and cleaning.  (*Id.*)  Plaintiff's position as a caregiver necessarily involved physical activity, namely "sitting, standing, walking, bending, twisting, reaching, pushing, pulling, lifting (100+ pounds), squatting, kneeling, climbing, crawling, overhead-type work, keyboarding, grasping, and torquing [sic]."  (*Id.*)

Throughout her years as a caregiver, Plaintiff experienced a series of injuries.  Most, but not all of her injuries were job-related.  In 2007, Plaintiff was rear-ended in a

---

[1] Section II.A, *infra*, discusses the legal basis allowing the district court to assume the correctness of the magistrate judge's findings.

[2] References to specific page numbers in a document filed in this case correspond to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.  However, page numbers in administrative records are annotated as discussed *infra* note 3.

[3] When applicable, the Court cites directly to the page numbers in the Administrative Record ("AR"), ECF Nos. 12–13, in order to avoid any confusion or misinterpretation of the Administrative Law Judge's ("ALJ") findings on Plaintiff's disability status.

car accident, which resulted in a neck injury.  (AR 1791.)  After Plaintiff went through physical therapy, her symptoms fully resolved.  (*Id.*)  Since then, Plaintiff's injuries arose in the course of her employment.  In 2009, Plaintiff reported experiencing pain in both of her wrists as a result of carrying groceries for her patients.  (*Id.*)  In 2010, Plaintiff fell at work, resulting in lower back pain.  (*Id.*)  After seeking and receiving treatment, Plaintiff's back issues resolved within two weeks.  (*Id.*)

Most seriously, on or around January 4, 2011, Plaintiff suffered a workplace injury while attempting to dress an elderly patient who weighed approximately 180 pounds. (AR 1785.)  As a result of her injury, Plaintiff reported "experiencing pain within both of her shoulders, knees and hips as well as within her low back and head."  (*Id.*)  Plaintiff's injury prompted her to seek treatment from Dr. Kenneth Romero, who had been treating Plaintiff in his capacity as a pain specialist since September 2009.  (*See* AR 1204, 1935.) Plaintiff has not returned to work to any extent since June 15, 2011.  (AR 1786.)

### B.    Dr. Romero's Treatment of Plaintiff and Medical Examinations

Since at least 2011, Dr. Romero treated Plaintiff for numerous physical conditions relating to bilateral arm pain, bilateral leg pain, right shoulder and back pain, and right rotator cuff repair.  (*See* AR 103.)  Dr. Romero also treated Plaintiff for her mental conditions, namely depression and generalized anxiety.  (*See id*.)  Dr. Romero's findings were addressed extensively in the Administrative Law Judge's ("ALJ") final decision on September 5, 2018.  (*See* AR 26, 29–31.)

#### 1.    Dr. Romero's Progress Notes

Between 2012 and 2016, Dr. Romero reported Plaintiff was responding well to the prescribed medication for pain management and observed that Plaintiff's condition continued to improve.  (*See, e.g.*, AR 759, 801, 1125, 1235, 1261, 1747, 1750.)  Further, as to Plaintiff's lower back and bilateral knee pain stemming from her 2011 workplace injury, Dr. Romero conducted ongoing physical examinations and documented

observations such as mild to moderate tenderness, and normal strength and gait.  (*See, e.g.*, AR 584–85, 609–10, 714–15, 720, 730, 736–37, 741–42, 746–47, 1112, 1117, 1127, 1133, 1144.)

Additionally, Dr. Romero assessed the state of Plaintiff's mental health on an ongoing basis.  Dr. Romero's progress notes reflected that Plaintiff "has no difficulty focusing on a subject," and "no complaints of dizziness or vertigo."  (AR 25–26.)  Dr. Romero's notes also indicated a normal CT scan of Plaintiff's head in August 2015, and discussed her ability to "attend to and follow commands normally and with intact memory."  (*Id.*)  In 2015, Plaintiff was also "exercising by walking half a mile to one mile three times a week."  (AR 31.)  Finally, Dr. Romero's notes expressed that, despite Plaintiff's disabling condition, Plaintiff "[took] a number of trips, primarily to Mexico that involve[d] taking the bus which [could] last up to 9 hours," and "even able to make the international trip to the Philippines where she stayed for 3 months."  (AR 29–30.)

### 2. Dr. Romero's Treating Source Statement

On April 28, 2016, Dr. Romero drafted and signed a Treating Source Statement. In it, he concluded that Plaintiff was limited in her ability to work due to lower back and leg pain.  Specifically, Dr. Romero found that Plaintiff:

(1)  would be off work 25 percent of the time due to trouble concentrating;

(2)  would miss more than four days of work per month;

(3)  could occasionally lift, but no more than 20 pounds, or else the lifting/carrying would worsen Plaintiff's lower back pain;

(4)  could sit four hours per day, and stand or walk three hours per day;

(5)  required a sit/stand option at work;

(6)  could frequently reach in all directions;

(7)  could occasionally push and pull with the bilateral upper extremities;

/ / /

4

(8)     could occasionally climb ramps and stairs, but never climb ladders and scaffolds;

(9)     could rarely balance, stoop, kneel, or crouch;

(10)    could never crawl;

(11)    could occasionally operate a motor vehicle;

(12)    could occasionally be exposed to extreme temperatures; and

(13)    could never be exposed to unprotected heights, pulmonary irritants, and vibrations.

(*See* AR 1204–07.)

### C.     Statement by Dr. Levine, Examining Physician

As part of a worker's compensation dispute in state court due to the workplace injury that occurred around January 4, 2011, Plaintiff also went through a physical and mental examination with Dr. Sidney Levine.  On March 12, 2012, Dr. Levine prepared an Initial Chart Note.  In it, Dr. Levine stated Plaintiff "is disabled from carrying out her regular work activities."  (AR 1796).

### D.     The Initial ALJ Decision and Remand

On November 15, 2013, Plaintiff filed an application for Title II benefits, alleging disability commencing June 15, 2011.  (*See* AR 158.)  After her application was denied initially and again upon reconsideration, (*see* AR 186–87), Plaintiff requested an administrative hearing.  (*See* AR 192–98.)  On September 19, 2016, the ALJ found that Plaintiff was not disabled within the meaning of Title II.  (*See* AR 158–68.)

Plaintiff appealed, and on July 31, 2017, the Appeals Council vacated the ALJ's decision and remanded Plaintiff's case to the ALJ for resolution of three specific issues:

(1)     "The hearing decision indicates that the claimant has severe mental impairments, but does not contain rationale for B and C criteria rated using the special technique described in 20 CFR 404.1520a.";

5

(2)   "The residual functional capacity should address the claimant's maximum ability to perform work related activities such as her ability to perform simple, detailed, and complex tasks (Social Security Rule 96-8p)."; and

(3)   "On April 26, 2016, approximately a month prior to the hearing, 736 pages [of] medical records document was submitted into the F section of the electronic file.  The Administrative Law Judge did not enter this evidence into the record, consider it, or label it as duplicative."

(*See* AR 174–76.)

### E.   The Final ALJ Decision

On remand, the ALJ convened a hearing on March 29, 2018 regarding Plaintiff's case.  (*See* AR 21, 42–70.)  On September 5, 2018, the ALJ issued his final decision, ultimately concluding that Plaintiff was not disabled within the meaning of Title II of the Act.  After first concluding that "[t]he claimant last met the insured status requirements of the Social Security Act on December 31, 2016," (AR 24,) the ALJ performed a five-step sequential evaluation to determine whether Plaintiff was disabled pursuant to 20 C.F.R. § 404.1520(a)(4).[4]

On step one: "The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 15, 2011 through her date last insured of December 31, 2016 (20 CFR 404.1571 *et seq*.)."  (AR 24.)

On step two: "Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine; status post bilateral shoulder surgeries with residual bilateral shoulder pain; major depressive disorder; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c))."  (AR 24.)  In so finding, the ALJ cited to the evidentiary record as follows:

---

[4] A discussion on what each step entails may be found *infra* pages 13–14 of this Order.

- "Examinations show normal range of motion of the hips with no neurological deficits.";

- "No severe hip impairment is established.";

- "Neurologist Edward Friedman, M.D., who evaluated the claimant in May 2014 did not find evidence of any neurological disorder and opined that there was no evidence to warrant further neurological testing.  No severe neurological impairment is established in connection with these complaints.";

- "MRI scans of the cervical spine in August 2012 and April 2014 were completely normal.  CT scan of the cervical spine in August 2015 was normal. Examinations of the cervical spine have been mostly normal other than some reduced range of motion with tenderness[,] and paraspinal muscle spasms on rare occasions.";

- "MRI scan of the left knee in May 2012 was normal.  X-ray of the left knee in November 2012 was negative.  MRI of the left knee in September 2012 was only remarkable for chondromalacia of the medical margin of the patella.  MRI of the right knee in May 2012 was normal.  Examinations of the knees reveal full range of motion of the knees.  No severe knee impairment is established by the record.";

- "EMG/NCV [electromyography and nerve conduction velocity] testing in July 2012 was normal with no evidence of carpal tunnel syndrome.  Further, the claimant has been consistently neurologically intact.  This is not a severe impairment.";

- "MRI scan of the left elbow in September 2012 showed mild distal triceps tendinopathy.";

- "Attending physician Romero documented no complaints of dizziness or vertigo.  CT scan of [Plaintiff's] head in August 2015 was normal.  Neurologist

7

Edward Friedman, M.D., who evaluated the claimant in May 2014 did not find evidence of any neurological disorder and opined that there was no evidence to warrant further neurological testing.  No severe neurological impairment is established in connection with the complaints of vertigo and dizziness.";

- "There is no evidence of continued alcohol abuse.  Therefore, her history of alcohol abuse, in reported full remission, is not a severe impairment."; and finally,

- "There are no records that indicate that the claimant's asthma had been a significant problem requiring ongoing or regular treatment.  Examinations of her lungs have been normal.  Her asthma is not a severe impairment."

(AR 24–25 (internal references to evidentiary exhibits omitted).)

On step three: "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  In so finding, the ALJ cited to the evidentiary record as follows:

- "In understanding, remembering, or applying information, the claimant had a mild limitation.  Progress notes from attending physician Romero show that the claimant is able to attend to and follow commands normally and with intact memory.  Mental status examinations from PsyCare and Dr. Chavez show that the clamant has been mostly cognitively intact since he began treating the claimant in 2011, except for some visits in which he noted poor memory.  This limitation is consistent with the opinion of Dr. Nicholson [a physician who conducted a consultative psychiatric evaluation of Plaintiff].";

- "In interacting with others, the claimant had a mild limitation.  This limitation is consistent with the opinion of Dr. Nicholson.  The record shows that even with

8

the claimant's physical and mental impairments, she has a fairly good support network consisting of her immediate family, relative, and friends.";

- "With regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation.  Progress notes from Dr. Romero show that the claimant has no difficulty focusing on a subject.  Mental status examinations from PsyCare and Dr. Chavez show that claimant has been mostly cognitively intact since he began treating claimant in 2011, except for some visits in which he noted poor concentration.  While Dr. Nicholson opined that the claimant has a mild limitation in this domain, I have given the claimant the benefit of the doubt and found a moderate limitation is indicated when considering the combined effects of her depression, anxiety, and chronic pain."; and, finally,

- "As for adapting or managing oneself, the claimant had experienced a moderate limitation[,] . . . one inpatient psychiatric hospitalization in July 2014. However, mental health treatment records show that the claimant's symptoms have stabilized with treatment; there is no evidence of suicidal ideation, suicide attempts, panic attacks, agoraphobia or other exacerbations.  She has been able to live normally and even take a number of trips, primarily to Mexico that can require up to a 9 hour bus ride . . . .  She even had a 3 month stay in the Philippines.  Because the claimant's mental impairments did not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria were not satisfied."

(AR 26–27 (internal references to evidentiary exhibits omitted).)

On step four, the ALJ first concluded that, "through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for occasional bending, stooping, crouching, climbing stairs, kneeling; no crawling or climbing ladders; and due to her depression and anxiety, she is

9

limited to no complex or highly detailed work but can do simple or mildly detailed work." (AR 27.)  In so finding, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR [Social Security Ruling] 16-3p." (AR 27–28.)  Of note, the ALJ commented that Plaintiff's course of treatment "generally reflected a conservative approach." (AR 29.)  Even in the context of mental health, "the claimant's symptoms have stabilized with conservative mental health treatment." (*Id.*)

"The [ALJ] has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." (AR 28.)  At the same time, the ALJ decided to give "very little weight" to Dr. Romero's opinion that was articulated in the Treating Source Statement, *supra* Section I.B.2.  The ALJ decided that Dr. Romero's opinions in the Treating Source Statement were "not substantiated by objective findings," but instead "based on the claimant's subjective account of what she could do." (AR 30–31.)  Since this Treating Source Statement is at the crux of Plaintiff's challenge, the Court will further discuss the ALJ's rationale *infra* Section III.A.1.

As another part of step four, the ALJ determined that Plaintiff cannot perform any of her past relevant work. (AR 32.)  The ALJ accepted the testimony of the vocational expert on the issue. (*Id.*)

Finally, at step five, based on Plaintiff's residual functional capacity, age, education, and work experience, the ALJ determined that Plaintiff was not "disabled," for she can adjust to other work. (*See* AR 32–33.)  Specifically:

- "The claimant was born on March 10, 1963 and was 53 years old, which is defined as a younger individual age 18-49, on the date last insured.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).";

- "The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564).";

- "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)."; and

- "Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a)."

(AR 32 (internal reference to evidentiary exhibits omitted).)

Based on this five-step analysis, the ALJ decided that "[Plaintiff] was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2016, the date last insured." (AR 33.)

On July 15, 2019, the Appeals Council denied Plaintiff's request for further review, noting "the reasons [Plaintiff cited in her appeal] do not provide a basis for changing the Administrative Law Judge's Decision." (*See* AR 1–8.) By so finding, the Appeals Council confirmed the ALJ's determination of non-disability and denied Plaintiff Title II benefits.

### F.   The Instant Lawsuit

On September 13, 2019, Plaintiff initiated this litigation. (ECF No. 1.) Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of Defendant's denial of Title II benefits. (*See id.*) On October 11, 2019, Plaintiff filed a First Amended Complaint, which serves as the operative complaint in this matter. (ECF No. 6.) On December 20, 2019, Magistrate Judge Gallo issued a Scheduling Order on cross-summary judgment motions. (ECF No. 14.) On February 20, 2020, Plaintiff timely filed her summary

judgment motion.  (ECF No. 18.)  On April 16, 2020, Defendant timely filed its cross-summary judgment motion (and opposition to Plaintiff's summary judgment motion).  (ECF No. 19.)  On May 19, 2020, Plaintiff replied to Defendant's cross-summary judgment motion.  (ECF No. 20.)

On February 3, 2021, Magistrate Judge Gallo issued an R&R recommending Plaintiff's motion for summary judgment be denied and Defendant's cross-motion for summary judgment be granted.  (ECF No. 21.)  No objections have been filed by either party by the February 11, 2021 deadline provided in the R&R.

## II.    STANDARD OF REVIEW

### A.    The Magistrate Judge's R&R

The district court's duties in connection with an R&R of a magistrate judge are set forth in 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b).  The district judge must "make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b).  The district court need not review de novo those portions of an R&R to which neither party objects.  *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005) (citing *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc)).

Specifically regarding the magistrate judge's findings of fact, when no objections are filed, the Court may assume the correctness of it and decide the motion on the applicable law.  *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).  Here, because no objections have been filed, the Court assumes the correctness of the Magistrate Judge's factual findings and substantially adopts them in full.

/ / /

### B.      The Commissioner's Final Agency Decision

A court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quotations omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).  "[T]he evidence must be more than a mere scintilla but not necessarily a preponderance." *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted).  If the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971)).

## III.   DISCUSSION

For purposes of the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  ALJs determine such "disability" pursuant to a five-step evaluation process under 20 C.F.R. § 404.1520(a)(4), where generally speaking, the ALJ

13

considers: (1) the claimant's work activity, i.e., "substantial gainful activity"; (2) the severity of claimant's medical impairments; (3) whether the severe medical impairments satisfy the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 and meets the duration requirement (where if it does, the claimant is deemed disabled and if not, the ALJ moves on to step four); (4) the claimant's residual functional capacity ("RFC") and past relevant work; and (5) the possibility of adjusting to other work, based on the claimant's RFC, age, education, and work experience.  The claimant carries the initial burden of proving disability.  *See* 42 U.S.C. § 423(d)(5).  "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (citation omitted).  And concerning the claimant's possibility of adjusting to other work (step five), the ALJ may call upon a "vocational expert" to testify what jobs the claimant would be able to do given his/her RFC, and the availability of such jobs in the national economy.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (citation omitted).

Here, the ALJ's five-step analysis concluded that Plaintiff was not disabled.  (*See* AR 21–34.)  Plaintiff challenges this on two grounds.  First, Plaintiff argues that the ALJ failed to properly accord the medical evidence of her treating physician and examining physician (Dr. Romero and Dr. Levine, respectively).  (ECF No. 18-1 at 6–21.)  Second, Plaintiff argues that the ALJ's finding of Plaintiff's "moderate difficulties" (in terms of mental impairments) is inconsistent with the lack of limitations regarding concentration, persistence, or pace in Plaintiff's RFC.  (*Id.* at 22–23.)

The Magistrate Judge found that the ALJ properly assessed the opinion evidence of Plaintiff's treating and examining physicians.  (*See* ECF No. 21 at 13–19.)  The Magistrate Judge also concluded that the ALJ properly assessed Plaintiff's RFC.  (*Id.* at 19–21.)

/ / /

The Court agrees with the Magistrate Judge and finds that the ALJ did not err.  The ALJ did not broadly reject Dr. Romero's opinion; the ALJ's reservation was specifically against Dr. Romero's Treating Source Statement from April 28, 2016.  The ALJ took issue with this document because several conclusions were made without objective evidentiary support to support the conclusion that Plaintiff cannot conduct light work with certain limitations.  While Plaintiff had severe medical ailments, ultimately they were controlled.  In addition, it was acceptable for the ALJ to not explicitly mention Dr. Levine's opinion, since the substantive content of it (i.e., those that were not conclusory on the issue of disability) was incorporated in other parts of the decision.  Finally, the ALJ appropriately determined Plaintiff's RFC.  As to Plaintiff's protests, case law supports the proposition that a claimant may be able to perform simple or mildly detailed work, despite "moderate limitations" in certain mental capabilities (which was a decision that the ALJ was already making under "the benefit of the doubt," (AR 26)).

### A.    The Opinions of Plaintiff's Physicians

Plaintiff argues that the ALJ failed to analyze medical opinion evidence, namely the opinions of Plaintiff's treating physician Dr. Romero and Plaintiff's examining physician Dr. Levine.  The Court ultimately concludes that the ALJ gave appropriate weight to each opinion, and that the ALJ's findings (to an extent, in spite of the opinions) were supported by substantial evidence and did not contain legal error.

"Regardless of its source, [an ALJ] will evaluate every medical opinion" it receives.  20 C.F.R. § 404.1527(c).  Generally, the treating physician's opinion is afforded the greatest weight.  However, its authority is not absolute; "[the treating physician's opinion] is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194–95 (9th Cir. 2004) (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).  Specifically, "an ALJ may discredit treating physicians'

opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Id.* at 1195 (internal citations omitted).

Further, "conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citations omitted); *cf. Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (requiring "clear and convincing reasons that are supported by substantial evidence" if the ALJ is rejecting the "uncontradicted opinion" of the treating physician). Indeed, deference to the treating physician's opinion is only given if the opinion is "not inconsistent with the other substantial evidence in [the claimant's] case record." *See* 20 C.F.R. § 404.1527(c)(2). And if the treating physician's opinion is not given controlling weight, the following factors determine the appropriate weight: (1) length of the treatment relationship and the frequency of the examinations, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5), specialization, and (6) other factors the claimant presents. *See id.* § 404.1527(c).

### 1.    Dr. Romero's Opinion

#### a.    Nature of the Dispute

Primarily at issue in this case is Plaintiff's assertion that the ALJ did not accord the appropriate weight to Dr. Romero, who is the treating physician for Plaintiff. But the Court first clarifies this assertion's scope. The ALJ's decision is actually replete with Dr. Romero's observations. For example, when determining severe medical impairments under step two of the disability analysis, the ALJ refers to a variety of Dr. Romero's progress notes. (*See* AR 24–25.) This is true for step three as well, where progress notes from Dr. Romero show "that the claimant is able to attend to and follow commands normally and with intact memory," "that the claimant has no difficulty focusing on a subject," etc. (AR 26.) Further, in analyzing step four: "Repeat physical examinations

by treating sources, including Dr. Romero, do not substantiate the claimant's allegations of pain and limitation . . . ."  (AR 29.)  Indeed, "physician Romero noted that the claimant is 'stable' regarding her pain as it is well managed."  (*Id.*)

Rather, Plaintiff's frustration is targeted at the ALJ giving "very little weight" to Dr. Romero's Treating Source Statement from April 28, 2016.  (AR 31.)  Upon close review of the Treating Source Statement and the ALJ decision, it is plain that the Treating Source Statement was carefully considered, compared with the record evidence, and given the weight that it deserved.

### b.   The Treating Source Statement and the ALJ Decision

Dr. Romero's Treating Source Statement opined that Plaintiff is likely to be: "off task" 25% of a typical workday, absent from work more than 4 days per month, able to lift or carry up to 20 pounds at most, able to sit a total of 4 hours in an 8-hour workday, able to stand or walk for a total of 3 hours in an 8-hour workday, needing the option to sit or stand at will but not needing an assistive device to ambulate, having some limitations in the left and right arms/hands (such as only occasionally being able to push and pull), occasionally able to climb ramps and stairs but never for ladders and scaffolds, and rarely able to balance, stoop, kneel, crouch and never able to crawl.  (*See* AR 1204–07.) Further, the Treating Source Statement opined that there will be certain environmental limitations for Plaintiff.  She can occasionally operate a motor vehicle and be exposed to temperature extremes, but can never be exposed to unprotected heights, pulmonary irritants, and vibrations.  (*See* AR 1207.)

The ALJ decided to not give this document much weight because he concluded that the opinions contained in it were "not substantiated by objective findings," but instead "based on the claimant's subjective account of what she could do."  (AR 30–31.) The ALJ reached this conclusion because while the Treating Source Statement stated that Dr. Romero's findings were based on the diagnoses of lumbar spondylosis, disc disorder,

neuritis, and idiopathic polyneuropathy, (AR 1204 (item 3),) the record evidence did not support such diagnoses.

Concerning the diagnoses of lumbar spondylosis, disc disorder, and neuritis, the ALJ discussed how "imaging showed only mild degenerative changes" and how Dr. Romero's own notes indicated that Plaintiff only had "mild" degenerative disc disease. (AR 31 (citing AR 585).)

As to the diagnoses of idiopathic polyneuropathy, the ALJ concluded that there was no evidence in the record to support this disorder. (AR 31.) The ALJ referred to four sources of evidentiary exhibits in reaching his conclusion. First, the ALJ referenced Dr. Romero's January 22, 2014 office note. "Neither the lumbar spine impairment nor the left knee impairment limits the claimant's ability to walk as indicated by Dr. Romero's own examinations that reveal no motor weakness in the lower extremities; intact reflexes; no sensory diminishment; and a normal gait." (AR 31 (citing AR 714–15).) Second, the ALJ referred to Dr. Romero's May 19, 2015 office note, in which Dr. Romero documented that Plaintiff was walking half a mile to a mile, three times a week. (AR 31 (citing AR 1120).) Third, the ALJ referred to Dr. Romero's November 14, 2016 office note, (AR 1750,) where Plaintiff's pain was stable and well managed with 3 Percocet per day. (AR 31.) The ALJ also referenced Dr. Romero's February 29, 2016 and August 3, 2016 office notes, (AR 1235, 1261,) which evinced similar pain management and Percocet prescriptions. (*See* AR 31.) Fourth and finally, the ALJ referenced Plaintiff's travel records to argue that they conflicted with Dr. Romero's opinions on Plaintiff's ability to perform certain tasks. (*See* AR 31 (citing AR 1110, 1113–14, 1258, 1712, 1741, 1751, 1756, 2499).)

### c.    The Evidentiary Record

The Magistrate Judge found that there was no impropriety in the ALJ's decision since the underlying evidentiary record controverts Dr. Romero's broad conclusions of

Plaintiff's disability status.  The Court agrees with the Magistrate Judge's finding because the Treating Source Statement's claims of "diagnoses" are at odds with the rest of the administrative record.  Important to note here, the ALJ is analyzing the Treating Source Statement at *stage four*, i.e., determining Plaintiff's RFC, not medical impairments generally.  The RFC is "what [one] can still do despite [one's] limitations . . . based on all the relevant evidence in [one's] case record."  20 C.F.R. § 416.945(a)(1).

In other words, when the Treating Source Statement represents that Plaintiff will be off task 25% of a typical workday and absent from work more than 4 days per month, there must be a "relevant evidence" that could back such claim.  Similarly, when Dr. Romero opines that Plaintiff can stand/walk for 3 hours and sit for 4 hours, there must be a record to support this.  The Treating Source Statement referenced the "diagnoses" as such support.

Yet none of these diagnoses translates to the conclusion that Plaintiff seeks, because they all stop short of indicating that Plaintiff cannot perform "light work" per 20 C.F.R. § 404.1567.  Plaintiff attempts to present a variety of "objective evidence," (ECF No. 18-1 at 12–14, 15–20,) but they are not convincing.  None of Plaintiff's evidence (including recent observations from 2015 to 2017) account for the fact that her ailments are well-*managed*.  In fact, the ALJ highlighted how the physicians have adopted a "conservative" approach to Plaintiff's physical and mental health treatment.  (AR 29.)  Thus even when Plaintiff was diagnosed with idiopathic polyneuropathy, bilateral leg numbness, or other lumbar spine impairments, (*see* AR 1233,) these cannot be the basis to then conclude that light work is impossible.  To illustrate, the next page of that same medical report details how her "functional status [is] maintained with medication use," with "[n]o aberrant behavior or substance misuse demonstrated," (AR 1234.)  There is simply no evidence to counter Dr. Romero's own 2016 to 2018 opinions which state that, despite all of Plaintiff's symptoms, her pain is generally under adequate control.  (*See,*

*e.g.*, AR 1235, 1708, 1715, 1740, 1746.)  Indeed, the ALJ explicitly discussed how "the medications have been relatively effective in controlling the claimant's symptoms."  (AR 29.)  This is true for Plaintiff's mental health conditions as well.  (*See* AR 28–29 (discussing how Plaintiff's moods have been "stable").)

Given that multiple evidentiary records indicate a control over Plaintiff's ailment, which permits her to conduct light work with certain exceptions, the ALJ's observation of inconsistencies between the Treating Source Statement and Plaintiff's own admissions also becomes more salient.  For example, the Treating Source Statement disclaimed how Plaintiff can only sit a total of 4 hours in an 8-hour workday, or stand or walk for a total of 3 hours in an 8-hour workday.  (*See* AR 1205.)  Such disclaimer is in clear tension with enduring a 9-hour bus ride to Mexico, taking an international flight to the Philippines, or walking half a mile to one mile three times a week.  (*See, e.g.*, AR 1120, 1712, 1751.)

### d.   Other Defenses for the Treating Source Statement

Because the evidentiary record, including Dr. Romero's own notes and Plaintiff's admissions, indicate that Plaintiff is still able to perform light work (albeit certain limitations discussed by the ALJ), the ALJ did not err in rejecting the conclusions made in Dr. Romero's Treating Source Statement.  The Court now addresses several other claims made by Plaintiff.

First, Plaintiff claims that the ALJ "ignored or failed to address" Section 404.1527 factors.  (*See* ECF No. 18-1 at 10–12.)  The Court disagrees.  To start, "the ALJ has no obligation to explicitly enumerate each of the six factors described in the Social Security regulations," because the regulations only require "good reasons" to be provided when giving weight to the treating physician's opinion.  *See Grant v. Astrue*, 857 F. Supp. 2d 146, 155 (D.D.C. 2012) (citations omitted).  Indeed, Plaintiff concedes that the ALJ acknowledged Dr. Romero's reasonable knowledge of Plaintiff's impairment based upon

20

the treatment relationship and his specialization, (*see* ECF No. 18-1 at 10–11,) so Plaintiff's frustration boils down to why these two factors were not deemed to be determinative.  The answer is that the other factors prevailed, especially given the inconsistencies the ALJ identified between the Treating Source Statement and the record evidence.

Next, Plaintiff argues that there was "no basis in the record" for the ALJ to assume that Dr. Romero's assessment was based on Plaintiff's subjective account.  (ECF No. 18-1 at 12.)  But contrary to Plaintiff's assertion, the ALJ cited to at least five different sources of records to make his supposition.  As discussed *supra* pages 17–18 of this Order, the ALJ first identified that Dr. Romero's opinions were based on his diagnoses, and then discussed how those diagnoses were not supported by the record.  Plaintiff cites to *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194 (9th Cir. 2008), but *Ryan* took issue with the underlying ALJ's decision because there was "nothing in the record to suggest that [the treating physician] . . . relied on [the claimant's] descriptions more heavily than his own clinical observations." *Id.* at 1200.  Such is far from the case here.  The ALJ cited to multiple parts of the record to conclude that the Treating Source Statement's reference to Dr. Romero's "diagnoses" was unconvincing.  Once Dr. Romero's diagnoses no longer were a valid basis for his opinion on light work, it is reasonable to conclude that Plaintiff's subjective accounts of her condition factored in more than it should have.

Relatedly, Plaintiff doubles down on Dr. Romero considering Plaintiff's subjective complaints, arguing that all medical examinations account for patients' self-description of their impairments and limitations.  Of course, all physicians start from their patients' self-descriptions of their health.  However, the governing law indicates that for claimants of Title II benefits, they must go beyond.  The treating physician's opinion must always be supported by the record and objective evidence, and not just the claimant's "subjective

descriptions of pain." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Finally, Plaintiff argues that the ALJ's discussion of inconsistency constituted a "substitution" of the ALJ's own opinion for that of the medical provider, citing to *Miller v. Astrue*, 695 F. Supp. 2d 1042 (C.D. Cal. 2010). (ECF No. 18-1 at 15–16.) As the Magistrate Judge commented too, *Miller v. Astrue* is not applicable to the facts in the present lawsuit. The court in *Miller v. Astrue* disapproved "the ALJ [from acting] as his own medical expert, [or] substituting his opinion for [the treating physician's] professional interpretation of the clinical testing." 695 F. Supp. 2d at 1048. Here, the issue is what constitutes such "substitution." Contrary to Plaintiff's suggestion, *Miller v. Astrue* did not equate finding inconsistencies in treatment notes with an ALJ acting as his own medical expert. The court instead took issue with the ALJ substituting a medical expert's opinion with his own based in part on his own observations at the hearing. *See id.* at 1048.

Such is not the case here. Rather, inconsistency between a treating physician's opinion and medical evidence *in the record* can be a specific, legitimate reason to discount the treating physician's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between [the treating physician's q]uestionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting [the treating physician's] opinion of [the claimant's] limitations."); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001 ("[A]n ALJ need not accept a treating physician's opinion that is . . . unsupported by clinical findings."). In the present case, the ALJ provided specific and legitimate reasons for discounting the conclusions made in the Treating Source Statement. The ALJ did not ignore the requisite regulatory

/ / /

factors in considering Dr. Romero's opinion, nor did the ALJ substitute the opinion with his own judgment.[5]

### 2.    Dr. Levine's Opinion

Plaintiff also briefly questions the ALJ's decision for not acknowledging the opinion of Dr. Levine, who at a different lawsuit evaluated Plaintiff and concluded that she was disabled.  (*See* ECF No. 18-1 at 8, 20.)

As previously discussed, "[r]egardless of its source, [an ALJ] will evaluate every medical opinion" it receives.  20 C.F.R. § 404.1527(c).  However, this does *not* mean that the ALJ must discuss every piece of evidence in his or her decision.  *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).  Further, a statement by a medical source that a plaintiff is "disabled" or "unable to work" does not mean that the Commissioner is compelled to make that same finding.  *See id.* § 404.1527(d)(3).  The Commissioner "will not give any special significance to the source of an opinion on issues reserved for the Commissioner," such as whether a claimant qualifies as "disabled" under the Act.  *Id.*

Here, Dr. Levine discussed how Plaintiff previously was able to lift more than 100 pounds, squat, kneel, climb, crawl, etc.  (*See* AR 1785.)  These same considerations are referenced already.  The ALJ determined that Plaintiff had the RFC in which she cannot climb, kneel, crawl, etc.  (AR 27.)  And upon hearing from the vocational expert, the ALJ

---

[5] Plaintiff also discusses that consistency is a "nuanced" medical consideration, and how Dr. Romero's opinion could be read as consistent since consistency does not need to be free of any doubt.  But even assuming a "nuanced" view, Plaintiff simply fails to direct the Court as to which of Dr. Romero's opinion concludes that Plaintiff cannot conduct light work with limitations whatsoever.  At best, Plaintiff's argument demonstrates how the evidence is susceptible to more than one rational interpretation, in which case the Court must defer to the ALJ's conclusion as discussed *supra* Section II.B.

concluded that Plaintiff can no longer perform her past relevant work, which was work at the heavy/very heavy exertional level.  (AR 32.)

In fact, the rest of Dr. Levine's March 12, 2012 report contravenes Plaintiff's conclusions, for it summarizes unremarkable physical examination results: "slight narrowing of the L5-S1 intervertebral disc space[, where the] remaining disc spaces are adequately maintained," "no evidence of fracture or bony abnormalities" in the hips, "[n]ormal x-ray examination of the pelvis," "[t]he glenohumeral joint appears normal" in the left shoulder, "no evidence of fracture, soft tissue calcification or bony abnormality" in either the right or left knee, and "[n]ormal x-ray examination of the right and left knees.  (AR 1792.)

What Plaintiff is asking—i.e., go a step further and take Dr. Levine's conclusion that Plaintiff is "disabled" at face value—is expressly not required.  *See* 20 C.F.R. § 404.1527(d)(3); *see also id.* § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled.").

### B.    Plaintiff's Residual Functional Capacity ("RFC")

Finally, Plaintiff contends that despite the ALJ's determination that Plaintiff has moderate difficulties concerning concentration, persistence, or pace, the ALJ "included no limitations regarding concentration, persistence or pace in the RFC, but only limited her to simple or mildly detailed work."  (ECF No. 18-1 at 22 (emphasis removed).)  Further, Plaintiff asserts that the ALJ failed to give "a more detailed assessment" of the evaluation process.  (*See id.*)  According to the R&R, the ALJ properly assessed Plaintiff's RFC.  The Magistrate Judge noted there is "ample detail" in the record in which the ALJ examined and accounted for evidence bearing on Plaintiff's ability to concentrate, maintain stamina, and pace herself in mental tasks.  (ECF No. 21 at 19–20.)  Once again, the Court agrees with the Magistrate Judge.

To reiterate, the RFC is the most a claimant can still do despite any physical or mental limitations that affect her ability to perform work-related tasks. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ's RFC findings "will be upheld 'if supported by inferences reasonably drawn from the record'" and "when the evidence is susceptible to more than one rational interpretation." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted).

Applying the above standard, the ALJ appropriately considered the evidentiary record in determining that, in spite of "moderate limitation," Plaintiff could still perform "simple or mildly detailed work," and could perform "the requirements of representative occupations such as: sub-assembler . . . with 30,000 national jobs[, and] handpacker . . . with 110,000 national jobs." (AR 27, 33.) In finding Plaintiff's moderate limitation with regard to concentrating, persisting, or maintaining pace, the ALJ considered Dr. Romero's progress notes and mental status examinations. (*See* AR 26.) The ALJ flagged how these progress notes indicated that Plaintiff had "no difficulty focusing on a subject." (*Id.*) Further, the underlying mental status examinations demonstrated that Plaintiff "has been mostly cognitively intact," except for some visits where she had "poor concentration." (*Id.*) The ALJ even gave Plaintiff "the benefit of the doubt" and found a moderate limitation when Dr. Gregory Nicholson conducted a consultative psychiatric evaluation of Plaintiff and opined that Plaintiff had only a mild limitation. (*Id.*; *see also* AR 789.) At worst, the fact that the ALJ *elevated* his finding to moderate limitation explains why the ALJ also concluded that Plaintiff could still perform simple or mildly detailed work.

And contrary to Plaintiff's suggestion, finding that Plaintiff has "moderate limitations" and deciding that Plaintiff could perform simple or mildly detailed work are

/ / /

not inconsistent conclusions.[6]  *See, e.g.*, *Lee v. Berryhill*, 721 F. App'x 604, 608 (9th Cir. 2017) ("[T]he ALJ accounted for his finding that [plaintiff] had moderate difficulties in concentration, persistence, or pace by limiting [plaintiff] to 'simple repetitive tasks' because this limitation accorded with the restrictions discussed in the medical record."); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("The ALJ translated [plaintiff's] condition, including the pace and mental limitations, into the only concrete restrictions available to him—[the doctor's] recommended restriction to 'simple tasks.'"); *Valdez v. Berryhill*, 746 F. App'x 676, 678 (9th Cir. 2018) ("By limiting [plaintiff] to simple instructions and work that requires only occasional changes, the ALJ reasonably assessed specific functional limitations consistent with the record as a whole . . . .").

Thus, upon reviewing the ALJ's assessment of the RFC, the Court agrees with the R&R and finds that the ALJ engaged in a sufficient assessment that was also consistent with the moderate mental limitations identified in the medical record.  *See* 20 C.F.R. § 416.945(a)(2).  Accordingly, the Court finds that the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence and is free from material legal error.

## IV.   CONCLUSION

Based on the above, the Court **ADOPTS** the R&R and **GRANTS** Defendant's cross-motion for summary judgment, **DENIES** Plaintiff's motion for summary judgment, and **AFFIRMS** the decision of the Commissioner.  The Clerk of the Court shall enter

*/ / /*

---

[6] Plaintiff also mischaracterizes the ALJ decision as somehow conceding a need for "a more detailed assessment."  (*See* ECF No. 18-1 at 22–23; ECF No. 20 at 2.)  To the contrary, the ALJ makes that assessment in the subsequent pages.  (*See* AR 27–31.)

judgment in accordance with this Order.

**IT IS SO ORDERED.**

Dated:  March 31, 2021

Hon. Gonzalo P. Curiel
United States District Judge

19-cv-1760-GPC-WVG